OPINION
BALES, Justice.
¶ 1 Based on his possession of child pornography, Morton Robert Berger was convicted of twenty separate counts of sexual exploitation of a minor under the age of fifteen and sentenced to twenty consecutive ten-year prison terms. We hold that these sentences do not violate the Eighth Amendment’s prohibition on cruel and unusual punishment.
I.
¶ 2 Arizona severely punishes the distribution or possession of child pornography. Under Arizona law, a person commits sexual exploitation of a minor, a class two felony, by knowingly “[djistributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.” Ariz.Rev.Stat. (“A.R.S.”) § 13 — 3553(A)(2) (2002). A “visual depiction,” for purposes of this statute, “includes each visual image that is contained in an undeveloped film, videotape or photograph or data stored in any form and that is capable of conversion into a visual image.” A.R.S. § 13-3551(11). If a depiction involves a minor under the age of fifteen, the offense is characterized as a dangerous crime against children. A.R.S. § 13-3553(C).
¶ 3 Under this statutory scheme, the possession of each image of child pornography is a separate offense. A.R.S. §§ 13-3551(11), - 3553(A)(2); see also State v. Taylor, 160 Ariz. 415, 420, 773 P.2d 974, 979 (1989) (affirming fifty consecutive sentences for possession of fifty contraband images obtained over time). Consecutive sentences must be imposed for each conviction involving children under fifteen, and each such sentence carries a minimum term of ten years, a presumptive term of seventeen years, and a maximum term of twenty-four years. A.R.S. § 13-604.01(D), (F), (G), (K). Such sentences must be served without the possibility of probation, early release, or pardon. A.R.S. § 13-3553(0 (prescribing sentencing under § 13-604.01).
*475 ¶ 4 A grand jury indicted Berger on thirty-five separate counts of sexual exploitation of a minor based on his possession of printed photographs, computer photo files, and computer video files depicting children in sexual acts. On the State’s motion, the trial court dismissed fifteen counts, and trial proceeded on the twenty remaining counts.
¶ 5 The trial evidence established that Berger possessed numerous videos and photo images of children, some younger than ten years old, being subjected to sexual acts with adults and other children, including images of sexual intercourse and bestiality. The jury also heard testimony indicating that, from 1996 to 2002, Berger had downloaded computer files containing child pornography; he had identified several “favorite” websites with titles indicating they provided child pornography; he had recently viewed contraband material; and he had created both computer and hard copy filing systems to maintain his collection. The jury convicted Berger of twenty counts of sexual exploitation of a minor and found that each depiction involved a child under the age of fifteen.
¶ 6 The trial judge sentenced Berger to a ten-year sentence — the minimum mitigated sentence allowed — for each of his crimes and, as required by statute, ordered the sentences to be served consecutively. A.R.S. §§ 13-604.01, -3553(C). The court rejected Berger’s argument that his sentences violated the Eighth Amendment’s prohibition on cruel and unusual punishment. Berger appealed, and a divided panel of the court of appeals affirmed his convictions and sentences. State v. Berger, 209 Ariz. 386, 103 P.3d 298 (App.2004). He petitioned for review, arguing that the rulings below conflict with this court’s opinion in State v. Davis, 206 Ariz. 377, 79 P.3d 64 (2003).
¶ 7 We granted Berger’s petition to again consider the framework for reviewing Eighth Amendment challenges to lengthy prison sentences. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and A.R.S. section 12-120.24 (2003).
II.
¶ 8 The Eighth Amendment to the United States Constitution bars the infliction of “cruel and unusual punishments.” U.S. Const, amend. VIII. This provision “guarantees individuals the right not to be subjected to excessive sanctions.” Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). “The right flows from the basic precept of justice that punishment for crime should be graduated and proportioned to the offense.” Id. (internal quotation marks and citation omitted).
¶ 9 The Supreme Court has long recognized that the Eighth Amendment limits permissible sanctions in various contexts. For example, the Court has held that the death penalty cannot be imposed for the rape of an adult woman, on mentally retarded defendants, or on those who commit their crimes as juveniles. See id. at 568-69, 125 S.Ct. 1183 (collecting cases). Likewise, the Court has held that a sentence to “12 years jailed in irons at hard and painful labor for the crime of falsifying records was excessive.” Atkins v. Virginia, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (citing Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910)). The Court has also observed that “[ejven one day in prison would be a cruel and unusual punishment for the ‘crime’ of having a common cold.” Robinson v. California, 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).
¶ 10 Although “the Eighth Amendment has been applied to lengthy sentences of incarceration,” Davis, 206 Ariz. at 381, ¶ 13, 79 P.3d at 68 (citation omitted), courts are extremely circumspect in their Eighth Amendment review of prison terms. The Supreme Court has noted that noncapital sentences are subject only to a “narrow proportionality principle” that prohibits sentences that are “grossly disproportionate” to the crime. Ewing v. California, 538 U.S. 11, 20, 23, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (O’Connor, J., concurring in the judgment) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).
¶ 11 This court reviews Eighth Amendment challenges to the length of prison sentences under the framework outlined by Jus *476 tice Kennedy in his concurring opinion in Harmelin and later employed by Justice O’Connor in announcing the judgment of the Court in Ewing. Davis, 206 Ariz. at 383, ¶ 30, 79 P.3d at 70.[1]
¶ 12 Under this analysis, a court first determines if there is a threshold showing of gross disproportionality by comparing “the gravity of the offense [and] the harshness of the penalty.” Ewing, 538 U.S. at 28, 123 S.Ct. 1179; accord Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment) (same). If this comparison leads to an inference of gross disproportionality, the court then tests that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime. Ewing, 538 U.S. at 23-24, 123 S.Ct. 1179; Harmelin, 501 U.S. at 1004-05, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment).
¶ 13 In comparing the gravity of the offense to the harshness of the penalty, courts must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences. The threshold inquiry is guided by several principles that include the primacy of the legislature in determining sentencing, the variety of legitimate penological schemes, the nature of the federal system, and the requirement that objective factors guide proportionality review. Ewing, 538 U.S. at 23, 123 S.Ct. 1179 (citing Harmelin, 501 U.S. at 997, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment)). These principles inform the broader notion that the Eighth Amendment “does not require strict proportionality between crime and sentence” but instead forbids only extreme sentences that are “grossly disproportionate to the crime.” Id. at 23, 123 S.Ct. 1179 (quoting Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment)) (internal quotation omitted).
¶ 14 In Ewing, the Court rejected an Eighth Amendment challenge to a prison term of twenty-five years to life under California’s “three strikes law” for a recidivist offender convicted of stealing three golf clubs worth nearly $1200. Justice O’Connor’s plurality opinion first considered the three strikes law in its general application. While recognizing that the law had been criticized for its lack of wisdom and lack of effectiveness, she noted that the State of California had a “reasonable basis” for believing the law would substantially advance the goals of incapacitating repeat offenders and deterring crime. Id. at 24-28, 123 S.Ct. 1179. Against this backdrop, Justice O’Connor considered and rejected Ewing’s argument that his sentence was unconstitutionally disproportionate. Acknowledging that his sentence was long, she concluded that “it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated.” Id at 30, 123 S.Ct. 1179.
¶ 15 Similarly, in Harmelin, the Court rejected an Eighth Amendment challenge to a mandatory sentence of life imprisonment without parole for a first-time offender convicted of possessing 672 grams of cocaine. 501 U.S. at 994-95, 111 S.Ct. 2680. In his plurality opinion, Justice Kennedy noted “that the Michigan legislature could with reason conclude that the threat posed to the individual and society by possession of this large an amount of cocaine — in terms of violence, crime, and social displacement — is mo *477 mentous enough to warrant the deterrence and retribution of a life sentence without parole.” Id. at 1003-04, 111 S.Ct. 2680 (noting Michigan legislature had a “rational basis” for determining to impose mandatory life sentence).
¶ 16 Recognizing that the penalty imposed on Harmelin was “severe and unforgiving” and that the deterrent effect of Michigan’s law was still uncertain, Justice Kennedy nonetheless concluded that “we cannot say the law before us has no chance of success and is on that account so disproportionate as to be cruel and unusual punishment.” Id. at 1008, 111 S.Ct. 2680. Because there was no threshold showing of gross disproportionality, it was unnecessary to compare the sentence with others in Michigan or in other states. Id. at 1005, 111 S.Ct. 2680.
¶ 17 Harmelin and Ewing reaffirm that only in “exceedingly rare” cases will a sentence to a term of years violate the Eighth Amendment’s prohibition on cruel and unusual punishment. Ewing, 538 U.S. at 22, 123 S.Ct. 1179 (citation omitted). A court must first determine whether the legislature “has a reasonable basis for believing that [a sentencing scheme] ‘advance[s] the goals of [its] criminal justice system in any substantial way.’ ” Id. at 28, 123 S.Ct. 1179 (quoting Salem v. Helm, 463 U.S. 277, 297 n. 22, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)) (second and third alteration in original). In light of that conclusion, the court then considers if the sentence of the particular defendant is grossly disproportionate to the crime he committed. Id. A prison sentence is not grossly disproportionate, and a court need not proceed beyond the threshold inquiry, if it arguably furthers the State’s penological goals and thus reflects “a rational legislative judgment, entitled to deference.” Id. at 30, 123 S.Ct. 1179. This framework guides our review of Berger’s Eighth Amendment challenge to his sentence.
III.
¶ 18 States may criminalize the possession of child pornography to advance the compelling interest of protecting children from sexual exploitation. As the Supreme Court has recognized:
It is evident beyond the need for elaboration that a State’s interest in “safeguarding the physical and psychological well-being of a minor” is “compelling.” The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.
Osborne v. Ohio, 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (quoting New York v. Ferber, 458 U.S. 747, 756-58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (citations omitted)) (affirming Ohio’s criminal ban on possession of child pornography). Child pornography not only harms children in its production, but also “causes the child victims continuing harm by haunting the children in years to come.” Id. at 111, 110 S.Ct. 1691 (citation omitted); see also United States v. Sherman, 268 F.3d 539, 547 (7th Cir.2001) (“The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters.”).
¶ 19 Criminalizing the possession of child pornography is tied directly to state efforts to deter its production and distribution. Given that the distribution and production of this material occurs “underground,” the legislature must be permitted to “stamp out this vice at all levels in the distribution chain.” Osborne, 495 U.S. at 110, 110 S.Ct. 1691. Moreover, criminalization encourages the destruction of such materials. Id. at 111, 110 S.Ct. 1691. The goal of combating the sexual abuse and exploitation inherent in child pornography animates Arizona’s severe penalties for the possession of such material.[2]
*478 ¶ 20 In 1978, the Arizona legislature determined that existing state laws were inadequate and enacted legislation specifically aimed at the child pornography industry. The new law, the predecessor to A.R.S. sections 13-3551 to -3553, declared its purposes to include protecting children from sexual exploitation and to “prevent any person from benefiting financially or otherwise from the sexual exploitation of children.” 1978 Ariz. Sess. Laws, ch. 200, § 2(B)(1), (3). The legislature specifically identified a series of harms to child victims, including the use of the material by defendants in luring new victims and the fact that such materials cause continuing harm to the children depicted. Id. § 2(A)(5)-(6).
¶21 In 1983, lawmakers extended this criminal ban to include possession itself, an amendment that prosecutors claimed would aid in prosecuting child molesters. 1983 Ariz. Sess. Laws, ch. 93; Hearing on H.B. 2127 Before the H. Comm. on Judiciary, 36th Legis., 1st Reg. Sess. 2 (Ariz.1983) (comments of Elizabeth Peasley, Pima County Attorney’s Office). Such legislation also recognizes the fact that producers of child pornography exist due to the demand for such materials. “The consumers of child pornography therefore victimize the children depicted ... by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.” United States v. Norris, 159 F.3d 926, 930 (5th Cir. 1998) (applying federal sentencing guidelines).
¶ 22 Correspondingly, the legislature soon thereafter included the possession of child pornography among crimes targeted in § 13-604.01 for enhanced sentencing as “dangerous crimes against children.” 1985 Ariz. Sess. Laws, ch. 364, § 6. This legislation provides “lengthy periods of incarceration ... intended to punish and deter” “those predators who pose a direct and continuing threat to the children of Arizona.” State v. Williams, 175 Ariz. 98, 102, 854 P.2d 131, 135 (1993) (reviewing the legislative history of § 13-604.01).
¶23 Given this history, we conclude that the legislature had a “reasonable basis for believing” that mandatory and lengthy prison sentences for the possession of child pornography would “advance [] the goals of [Arizona’s] criminal justice system in [a] substantial way.” Ewing, 538 U.S. at 28, 123 S.Ct. 1179 (internal citation omitted).
IV.
¶24 It is “[ajgainst this backdrop,” id., 538 U.S. at 28, 123 S.Ct. 1179 that we consider Berger’s claim that his sentences are grossly disproportionate to his offenses. Berger, as did Ewing, incorrectly frames the issue at the threshold. Ewing argued that his three strikes sentence of twenty-five years to life was based on his “shoplifting three golf clubs”; the Supreme Court noted that in fact Ewing had been sentenced for felony grand theft of nearly $1200 after having already been convicted of at least two violent or serious felonies. Id.
¶ 25 Berger contends that he has received a “200 year flat-time sentence ... upon his conviction of possession of child pornography. ...” But Berger in fact was convicted of twenty separate counts of possession of child pornography involving minors under fifteen, and he was sentenced to a ten-year term for each count. Each ten-year sentence must, by statute, be served consecutively. A.R.S. § 13-604.01(K).
¶ 26 Berger has not argued that the State’s charging him in twenty separate counts was improper. Nor could he, as each count was based on a different video or photo image, the images involved some fifteen different child victims, and Berger had accumulated the images over a six-year period. Cf. Taylor, 160 Ariz. at 420, 773 P.2d at 979 (declining to decide if individual could be prosecuted or sentenced on separate counts for multiple images acquired simultaneously). Nor does Berger dispute that possession of child pornography is a serious crime punish *479 able as a felony under federal law and most state laws. Cf Ewing, 538 U.S. at 28, 123 S.Ct. 1179 (noting theft of $1200 is a felony under federal and most state laws). For purposes of our analysis, Berger committed twenty separate, and very serious, felonies.
¶ 27 In comparing the gravity of Berger’s crime and the severity of the punishment, we focus on whether a ten-year sentence is disproportionate for a conviction of possessing child pornography involving children younger than fifteen. “A defendant has no constitutional right to concurrent sentences for two separate crimes involving separate acts.” State v. Jonas, 164 Ariz. 242, 249, 792 P.2d 705, 712 (1990). Accordingly, as a general rule, this court “will not consider the imposition of consecutive sentences in a proportionality inquiry....” Davis, 206 Ariz. at 387, ¶ 47, 79 P.3d at 74.[3]
¶28 “Eighth amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence.” United States v. Aiello, 864 F.2d 257, 265 (2d Cir.1988). Thus, if the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence .for a separate offense or because the consecutive sentences are lengthy in aggregate. See Jonas, 164 Ariz. at 249, 792 P.2d at 712. This proposition holds true even if a defendant faces a total sentence exceeding a normal life expectancy as a result of consecutive sentences. See, e.g., Lockyer, 538 U.S. at 74 n. 1, 123 S.Ct. 1166 (rejecting, in context of federal habeas review, dissent’s argument that two consecutive sentences of twenty-five years to life for separate offenses were equivalent, for purposes of Eighth Amendment analysis, to one sentence of life without parole for thirty-seven-year-old defendant); United States v. Beverly, 369 F.3d 516, 537 (6th Cir.2004); Taylor, 160 Ariz. at 422, 773 P.2d at 981.
¶29 Given the principles established by prior decisions, we cannot conclude that a ten-year sentence is grossly disproportionate to Berger’s crime of knowingly possessing child pornography depicting children younger than fifteen. Cf. Harmelin, 501 U.S. at 1004, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment) (noting severity of Harmelin’s drug possession crime brought life sentence “within the constitutional boundaries established by our pri- or decisions”).
¶30 The Supreme Court has affirmed a sentence of twenty-five years to life for the grand theft of three golf clubs worth nearly $1200 by a recidivist felon, Ewing, 538 U.S. at 30-32, 123 S.Ct. 1179; upheld a sentence of life in prison without parole for a first-time offender possessing 672 grams of cocaine, Harmelin, 501 U.S. at 996, 111 S.Ct. 2680; and found no Eighth Amendment violation in two consecutive twenty-year prison terms for possession of nine ounces of marijuana with intent to distribute, Hutto v. Davis, 454 U.S. 370, 374, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam). Similarly, this court has upheld a sentence of twenty-five years without parole for a twenty-one-year-old defendant convicted of selling a $1 marijuana cigarette to a fourteen-year-old, even though this sentence was consecutive to a twenty-one-year sentence for the defendant’s trafficking in stolen property with the same juvenile. Jonas, 164 Ariz. at 249, 792 P.2d at 712.
¶ 31 In fact, only once in the past quarter-century has the Supreme Court sustained an Eighth Amendment challenge to the length of a prison sentence. In that case, Solem v. Helm, a judge sentenced a non-violent repeat offender to life imprisonment without parole for the crime of writing a “no account” check for $100. 463 U.S. at 279-82, 103 S.Ct. 3001. In concluding that this life sentence, “the most severe punishment that the State could have imposed,” id. at 297, 103 S.Ct. 3001 was grossly disproportionate, the Court noted that Solem’s crime was quite minor, Solem, id. at 296,103 S.Ct. 3001. Indeed, the Court stated that the crime of uttering a no account check was “one of the most passive felonies a person could commit.” Id. (internal quotation omitted).
*480 ¶ 32 Solem also did not involve a mandatory sentence, but instead concerned a judge’s discretionary decision to impose the maximum authorized sentence. Thus, Solem did not implicate the “traditional deference” that courts must afford to legislative policy choices when reviewing statutorily mandated sentences. See Ewing, 538 U.S. at 25, 123 S.Ct. 1179 (O’Connor, J., announcing judgment of the Court); Harmelin, 501 U.S. at 1006-07, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment); Solem, 463 U.S. at 299 n. 26, 103 S.Ct. 3001 (noting that Court’s decision “d[id] not question the legislature’s judgment”).
¶ 33 Berger is in a fundamentally different situation than was the defendant in Solem. Berger received a statutorily mandated minimum sentence for each of his separate, serious offenses. The ten-year sentence imposed for each offense is consistent with the State’s penological goal of deterring the production and possession of child pornography.
¶ 34 The evidence showed that Berger knowingly gathered, preserved, and collected multiple images of child pornography. When confronted by the police, he acknowledged that he had “downloaded some things that he was not proud of, and was not sure if he should have downloaded them or not.” Additionally, in response to police questions, Berger admitted he had downloaded images of people under eighteen and that he believed these people were involved in sexual conduct. He also possessed a news article describing a recent arrest of another person in Arizona for possession of child pornography.
¶ 35 The images for which Berger was convicted, graphically depicting sordid and perverse sexual conduct with pre-pubescent minors, were well within the statutory definition of contraband. Nor did Berger come into possession of these images fleetingly or inadvertently. Berger had obtained at least two images in 1996, some six years before his arrest. The websites Berger flagged as “favorites” included graphic ti-ties indicating that they provide underage, and illegal, pornographic depictions. His computer contained “cookie” files and text fragments indicating he had searched for or visited websites providing contraband material. Berger also had recordable CDs indicating he had specifically set up a “kiddy porn” directory, which included other sub-folders with titles indicating a collection of contraband images.
¶ 36 Taken together, this evidence indicates that, in the terminology of Ewing, Berger’s sentences are “amply supported” by evidence indicating his “long, serious” pursuit of illegal depictions and are “justified by the State’s public-safety interest” in deterring the production and possession of child pornography. Ewing, 538 U.S. at 29-30, 123 S.Ct. 1179.
y.
¶37 Berger nonetheless argues that our holding in Davis compels the vacating of his sentence. In Davis, this court vacated four consecutive thirteen-year sentences imposed on a twenty-year-old man of below average intelligence convicted of having uncoerced sex at different times with two fourteen-year-old girls. 206 Ariz. at 380, ¶¶ 7-10, 79 P.3d at 68.
¶ 38 Davis represents an “extremely rare case” in which the court concluded prison sentences were grossly disproportionate. In so holding, the court observed that a sentence violates the Eighth Amendment if it is “so severe as to shock the conscience of society.” Id. at 388, ¶49, 79 P.3d at 75 (quotation omitted). This language, however, must be understood as a restatement of the court’s conclusion that the sentences were “grossly disproportionate” under the standard set forth in the plurality opinions in Harmelin and Ewing, which Davis expressly followed. Davis was not suggesting a different standard by its use of the phrase “shock the conscience of society.” [4]
*481 ¶39 Davis acknowledged, and we here reaffirm, that a sentencing scheme that does not violate the Eighth Amendment in its general application may still, in its application to “the specific facts and circumstances” of a defendant’s offense, result in an unconstitutionally disproportionate sentence. Id. at 384, ¶ 34, 79 P.3d at 71. Berger, however, misunderstands how the “specific facts and circumstances of the offenses” enter into the Eighth Amendment analysis under Davis.
¶ 40 The court in Davis effectively concluded that it could not reconcile the particular sentences imposed with any reasonable sentencing policy it could attribute to the legislature. Most significantly, the defendant in Davis, who had no prior criminal record, was caught up in the “broad sweep” of a statute that made no distinction between the perpetrators of incest, serial pedophiles, and an eighteen-year-old man engaging in sex initiated by a fifteen-year-old girlfriend. Id. at 384-85, ¶¶ 36-37, 79 P.3d at 71-72. The statute’s breadth in terms of imposing liability was coupled with a sentencing scheme mandating lengthy consecutive sentences for each offense. Id. at 385, ¶ 37, 79 P.3d at 72.
¶41 In Davis, objective facts about the offenses indicated that the defendant’s conduct was at the edge of the statute’s broad sweep of criminal liability. Davis was twenty years old and his maturity and intelligence fell far below that of a normal adult. Id. at 384-85, ¶ 36, 79 P.3d at 71-72. The girls involved not only participated willingly, but they had sought Davis out and gone voluntarily to his home. Id. If the girls had been fifteen or older and Davis within two years of their age, he would not have been criminally liable at ah. A.R.S. § 13-1407(F). But because his conduct was “swept up in the broad statutory terms,” Davis, 206 Ariz. at 385, ¶ 37, 79 P.3d at 72, Davis was subject to four consecutive thirteen-year sentences.
¶42 Only after concluding that objective factors about Davis’s offense showed he had been caught up in the expansive reach of the statute did the court determine that the consecutive nature of his sentences was relevant to the Eighth Amendment analysis. Id. at 387, ¶ 47, 79 P.3d at 74. In so doing, however, the court noted that its conclusion rested on the “specific facts and circumstances of Davis’s offenses,” and reaffirmed that the court “normally will not consider the imposition of consecutive sentences in a proportionality inquiry____” Id. at 387-88, ¶¶ 47-48, 79 P.3d at 74-75.
¶ 43 Berger argues that, in light of Davis, the court must consider the consecutive nature of his sentences in the Eighth Amendment analysis, along with the “victimless” nature of his crime, and that this court must, at the least, order a re-sentencing hearing so he can present “mitigation evidence.”
¶44 Berger’s conduct is at the core, not the periphery, of the prohibitions of A.R.S. § 13-3553(A)(2) — the knowing possession of visual depictions of sexual conduct involving minors — and he, unlike Davis, cannot be characterized as someone merely “caught up” in a statute’s broad sweep. Thus, there is no basis here to depart from the general rule that the consecutive nature of sentences does not enter into the proportionality analysis.[5]
*482 ¶ 45 Nor do we accept Berger’s assertion that his crimes were “victimless” merely because he did not touch or even photograph any children himself. The defendant in Harmelin similarly argued that his sentence to life without parole was unconstitutional because his possession of 672 grams of cocaine was a victimless and non-violent offense. In rejecting this argument, Justice Kennedy noted the pernicious effects of the drug trade, including drug-related violence. 501 U.S. at 1002-03, 111 S.Ct. 2680. Here, the link between possession of the contraband images and the abuse of children is at least as direct. Production of the images Berger possessed required the abuse of children, and Berger’s consumption of such material cannot be disassociated from that abuse for purposes of the Eighth Amendment proportionality analysis. Cf. Norris, 159 F.3d at 930 (noting, for purposes of federal sentencing guidelines, that “the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography”).
¶46 Alternatively, Berger asks this court to remand his ease for an evidentiary hearing in light of Davis. He notes that, when he was sentenced, our court’s Eighth Amendment ease law did not allow a judge to consider the individual facts and circumstances of the crime committed, see State v. DePiano, 187 Ariz. 27, 29-30, 926 P.2d 494, 496-97, and Davis overruled that holding, 206 Ariz. at 384, ¶ 34, 79 P.3d at 71.
¶ 47 Davis, however, does not interpret the Eighth Amendment to generally require evidentiary hearings to allow defendants to offer “mitigation evidence” to show that a particular sentence is disproportionate. The specific facts and circumstances considered relevant in Davis are those that go to the defendant’s degree of culpability for the offense, not to a showing that the defendant is, apart from the crime at issue, a good person or a promising prospect for rehabilitation. Cf. Davis, 206 Ariz. at 384, ¶ 32, 79 P.3d at 71 (citing cases from other jurisdictions that consider defendant’s culpability and harm caused by offense as part of proportionality analysis).
¶ 48 In Harmelin, the Court held that the Eighth Amendment does not require courts to consider mitigation evidence before imposing mandatory prison sentences, even when a mandatory life term results. 501 U.S. at 996, 111 S.Ct. 2680 (Scalia, J., announcing judgment of the Court); id. at 1006, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment). Justice Kennedy noted that the Court’s Eighth Amendment decisions “reject any requirement of individualized sentencing in noncapital cases,” and that the Court had “never invalidated a penalty mandated by a legislature based only on the length of a sentence, and especially with a crime as severe as this one, [a court] should do so only in the most extreme circumstance.” Id. at 1006-07, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment). Davis does not question these propositions.
¶ 49 Further, Berger has not identified any fact that he might offer on remand that would alter our conclusion that his sentences are not grossly disproportionate. At the time of his arrest, Berger was a fifty-two-year-old high school teacher, was married, and had no prior criminal record. These facts, which are in the record, do not reduce his culpability. The trial evidence showed that Berger knowingly sought and possessed numerous items of contraband child pornography over an extended period of time. Accordingly, considering “the specific facts and circumstances” of Berger’s crimes only amplifies the conclusion that he consciously sought to do exactly that which the legislature sought to deter and punish. See Seritt v. Alabama, 731 F.2d 728, 737 (11th Cir.1984) (rejecting habeas claimant’s argument for an evidentiary hearing when circumstances of the crime were demonstrated in the record).
VI.
¶ 50 Penalties as severe and unforgiving as those imposed here, as Justice Kennedy noted in Harmelin, present “a *483 most difficult and troubling case for any judicial officer.” 501 U.S. at 1008, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment). But “the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts.” Id. at 998, 111 S.Ct. 2680 (internal quotations omitted). Moreover, subject to constitutional limits, “[w]e recognize society’s strong interest in protecting children and understand and appreciate that it is the legislature’s province to assess the appropriate punishment for crimes against children.” Davis, 206 Ariz. at 385, ¶ 37, 79 P.3d at 72.
¶ 51 In light of the legislature’s intent to deter and punish those who participate in the child pornography industry, and Berger’s commission of twenty separate offenses, we hold that the twenty consecutive ten-year sentences are not grossly disproportionate to his crimes. We vacate the part of the opinion of the court of appeals that addresses the Eighth Amendment issue, and we affirm the sentences.
CONCURRING: RUTH V. McGREGOR, Chief Justice and MICHAEL D. RYAN and ANDREW D. HURWITZ, Justices.

. The Supreme Court's Eighth Amendment proportionality decisions "have not established a clear or consistent path for courts to follow." Lockyer v. Andrade, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). In rejecting challenges to prison sentences in Harmelin and Ewing, a majority of the Court did not agree in any one opinion. In each case, two justices concluded that prison sentences cannot be challenged on proportionality grounds under the Eighth Amendment and stated they would overrule contrary precedent. Ewing, 538 U.S. at 31, 123 S.Ct. 1179 (Scalia, J., concurring); id. at 32, 123 S.Ct. 1179 (Thomas, X, concurring); Harmelin, 501 U.S. at 994, 111 S.Ct. 2680 (Scalia, X, joined by Rehnquist, C.J., concurring). Justice Kennedy’s opinion in Harmelin and Justice O’Connor’s opinion in Ewing are the controlling opinions in those cases because they reflect the views of the justices concurring in the judgments on the narrowest grounds. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

. The importance of the state’s interest justifies prohibiting the mere possession of child pornography, even though the Supreme Court held in Stanley v. Georgia, 394 U.S. 557, 565-66, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), that the First and Fourteenth Amendments prevent states from criminalizing the in-home possession of adult obscenity. The Court in Osborne noted that child pornography has "de minimis” First Amendment value and “the interests underlying child pornog *478 raphy prohibitions far exceed the interests justifying the Georgia law at issue in Stanley." 495 U.S. at 108, 110 S.Ct. 1691.

. The court in Davis concluded that a departure from the general rule was appropriate in light of the specific facts and circumstances of that case. 206 Ariz. at 387, ¶ 47, 79 P.3d at 74. The general rule, rather than the exception recognized in Davis, applies here, for reasons explained infra.

. In State v. Davis, 108 Ariz. 335, 337, 498 P.2d 202, 204 (1972), this court rejected an Eighth Amendment challenge to a mandatory ten-year sentence for a recidivist offender, but noted that “in a proper case and at a proper time we may find that a particular penalty is so severe as to shock the conscience of society" and thus violate the Eighth Amendment. Prior to Ewing and Harmelin, this court said that it would judge whether a sentence "shocks the conscience of the *481 community” for Eighth Amendment purposes by whether it is "overly severe or disproportionate to the crime.” State v. Bartlett, 164 Ariz. 229, 233, 792 P.2d 692, 696 (1990), vacated, 501 U.S. 1246, 111 S.Ct. 2880, 115 L.Ed.2d 1046 (1991). The Supreme Court itself has not used the "shocks the conscience" language in its Eighth Amendment review of prison sentences, although it has used such language with respect to the different issue of whether state action is so arbitrary as to violate substantive due process. See Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

. Berger has no prior criminal record, and Davis noted that the defendant there had no prior adult criminal record. 206 Ariz. at 385, ¶ 36, 79 P.3d at 72. This fact is not in itself a basis for challenging a mandatory prison sentence as grossly disproportionate. See Harmelin, 501 U.S. at 994-95, 111 S.Ct. 2680 (rejecting defendant's contention that mandatory life sentence for first time offender was "cruel and unusual”). An offender's lack of prior convictions also does not alter the general rule that proportionality review focuses on the particular sentence for each offense rather than the cumulative sentences. For purposes of proportionality review, a prior criminal record may, however, increase the gravity of the offense that underlies a challenged prison sentence. See Ewing, 538 U.S. at 29, 123 S.Ct. 1179 ("In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of criminal recidivism.”). For example, this court may well have reached a different result in *482 Davis if the defendant had prior adult criminal convictions.