**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARMOUR LYLE JOLLEY,

Defendant - Appellant.

No. 07-8010

(D. Wyoming)

(D.C. Nos. 06-CR-00018-CAB
and 06-CR-00177-CAB)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, on January 4, 2008, this court ordered this case submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. Introduction

Armour Jolley operated a large drug distribution ring in which firearms played a major part. The United States obtained two indictments charging Jolley with numerous drug and firearm violations. He pleaded guilty to a single firearm charge. A jury convicted him on numerous additional drug and firearm charges, including five violations of 18 U.S.C. § 924(c)(1).[1] At sentencing, the district court ordered that all sentences on convictions other than those implicating § 924(c)(1) would run concurrently. Those concurrent sentences amounted to 235 months' imprisonment. As to the § 924(c)(1) convictions, the district court sentenced Jolley to a mandatory five-year term of imprisonment on the first conviction and mandatory twenty-five year sentences on each of the four additional convictions. 18 U.S.C. § 924(c)(1)(A)(I), (c)(1)(C). The district court ordered, as required by statute, that each of the § 924(c)(1) sentences would run consecutively to each other and consecutively to all other sentences imposed. *Id.* § 924(c)(1)(D)(ii). Thus, Jolley's ultimate sentence is 1495 months' imprisonment. On appeal, Jolley raises the following single question: Does his 1495-month sentence violate the Eighth Amendment's prohibition against cruel and unusual punishment?[2] Exercising jurisdiction pursuant to 28 U.S.C. § 1291

---

[1]The jury actually convicted Jolley of six violations of § 924(c), but the government moved at the sentencing hearing to dismiss one of the convictions.

[2]The United States asserts the question Jolley presents on appeal is

(continued...)

and 18 U.S.C. § 3742(a), this court answers that question in the negative and, therefore, **affirms** the sentence imposed by the district court.

## II.  Background[3]

Jolley was engaged in a large-scale drug distribution enterprise.  The jury found beyond a reasonable doubt that Jolley's drug conspiracy involved more than 500 grams of methamphetamine.  Jolley recognizes the extensive nature of

[2](...continued)
fundamentally flawed because he focuses his Eighth Amendment claim on his aggregate sentence, rather than on each of the separate sentences imposed on the various crimes of conviction.  *See United States v. Aiello*, 864 F.2d 257, 265 (2d Cir. 1998) ("Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulate sentence."); *State v. Berger*, 134 P.3d 378, 384 (Ariz. 2006) (same); *cf. O'Neil v. Vermont*, 144 U.S. 323, 331 (1892) ("If [the defendant] has subjected himself to a severe penalty, it is simply because he has committed a great many such offenses.").  Because Jolley's sentences are not cruel and unusual even when considered in the aggregate, we need not definitely resolve this question.

[3]Surprisingly, neither of the parties thought it necessary to provide this court with a summary of the trial testimony regarding Jolley's use and possession of firearms as it relates to his drug enterprise.  For his part, Jolley merely quotes verbatim a cursory statement provided by the prosecutor to the probation officer during preparation of the Presentence Report ("PSR").  As the PSR specifically recognizes, however, that summary was provided by the prosecutor prior to the production of the trial transcript and is devoid of any meaningful detail surrounding the evidentiary bases of Jolley's § 924(c) convictions.  In its brief, the government recognizes the extensive nature of the trial transcript, but notes that because the issue before this court is one of law it was not necessary to "recount in detail the testimony of the twenty-three witnesses called at trial to establish [Jolley's] guilt."  Appellee's Brief at 1.  Nevertheless, this court has examined the entire record on appeal, including the testimony of all witnesses called at trial.  Because it is helpful in placing Jolley's appeal in context, this court briefly recounts below the relevant facts regarding Jolley's drug and firearm convictions.

his drug enterprise in his brief on appeal, noting he "was involved in extreme and unremitting drug use and sales over a circumscribed period." Appellant's Brief at 12.

The trial transcript further reveals that firearms played a central role in the drug conspiracy headed by Jolley. Numerous witnesses testified that firearms of all types[4] were a constant, visible presence in the garage that served as the home base for Jolley's drug operations. Similarly, numerous witnesses testified Jolley consistently carried a firearm or firearms on his person. Like the firearms always made visible in the garage out of which Jolley sold drugs, he made a practice of letting those around him know that he was carrying a firearm. For instance, Janet Lara, a customer of Jolley's who also dealt drugs, testified as follows about a visit Jolley made to her home:

> I know on one occasion he came over and there was some of my friends that he didn't know and he pulled a gun out and sat it on his lap and then made—you know, made a point of letting these other people . . . —letting [them] see it, kind of playing with it. And that's usually what he would do. He would pull it out and set it in his lap when he was there.

Likewise, the trial transcript reveals that Jolley carried firearms in his vehicles when he was transporting drugs.

---

[4]In addition to numerous handguns, the evidence at trial indicated Jolley had in his possession a type of machine gun known as an "Uzi," and a handgun with a silencer. The record further reveals that Jolley took stolen firearms in exchange for drugs.

Jolley was not, however, content with merely allowing the constant and visible presence of firearms to operate as an implicit threat to all those surrounding him. Instead, Jolley actively employed his weapons to intimidate one of his drug dealers. During the first of two such incidents, Jolley went to the home of Christopher Sanders to collect a drug debt. Jolley entered the residence through an unlocked door and found Sanders asleep in bed. Jolley placed a pistol next to Sanders's head and pulled the trigger. When Sanders was awakened by the sound of the gun, Jolley demanded the money Sanders owed him. Jolley also threatened Sanders with a gun over drug debts on a second occasion. On this second occasion, Jolley drove Sanders to a spot in Casper, Wyoming and pointed a gun at Sanders's leg. Jolley indicated he was going to shoot Sanders in the leg to teach him a lesson about his unpaid drug debts. When Sanders was able to convince Jolley he would bleed to death from a wound to his leg before he could get to a hospital, Jolley relented on the threat. Jolley did, nevertheless, fire the weapon, surprising and frightening Sanders.

### III. Analysis

Jolley asserts his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. This court ordinarily reviews "de novo the question of whether a criminal sentence violates the Eighth Amendment." *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir.), *cert. denied*, 127 S. Ct. 723 (2006). Because Jolley failed to raise an Eighth Amendment claim before the

district court, however, this court reviews solely for plain error. *United States v. Barrett*, 496 F.3d 1079, 1108-09 (10th Cir. 2007), *cert. denied*, 76 U.S.L.W. 3497 (U.S. Mar. 17, 2008) (No. 07-7066). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotation omitted). Because the error alleged by Jolley is a constitutional error, this court applies the plain error standard "less rigidly." *United States v. Ramirez*, 479 F.3d 1229, 1247 (10th Cir. 2007) (quotation omitted), *cert. denied*, 128 S. Ct. 1074 (2008). In any event, we need not move past the first prong of the plain error test because *Angelos* establishes that the sentence imposed by the district court is not so grossly disproportionate to Jolley's crimes so as to amount to a cruel and unusual punishment. 433 F.3d at 750-53.[5]

In *Angelos*, the defendant was convicted of numerous drug and firearm charges, including three § 924(c) counts. *Id.* at 743. The district court sentenced Angelos, who had no prior adult criminal history, to a term of imprisonment of fifty-five years and one day. *Id.* In so doing, the district court rejected Angelos's claim that such a sentence would violate the Eighth Amendment. *Id.*

---

[5]As to Jolley's claim that *Angelos* was wrongly decided, this court simply notes "We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam) (citations omitted).

This court affirmed on appeal. *Id.* at 750-53. We began our analysis by noting that in the noncapital context, the Eighth Amendment has only a narrow proportionality principle, forbidding only those very few sentences that are grossly disproportionate to the crime. *Id.* at 750; *see also Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."). For example, despite a catalog of cases in which the Supreme Court has considered Eighth Amendment challenges to various state and federal sentences, it has struck down only two such sentences in the previous century. *Angelos*, 433 F.3d at 750. Both cases involved exceedingly harsh sentences for utterly non-violent crimes (fifteen years of hard labor for falsifying a public document and life imprisonment for writing a "no account" check). *Id.* (citing *Weems v. United States*, 217 U.S. 349 (1910) and *Solem v. Helm*, 463 U.S. 277 (1983)). In contrast to those two exceptions, *Angelos* noted that the Court had rejected Eighth Amendment challenges to a number of lengthy sentences. *Id.* at 750-51 (collecting cases).

*Angelos* then went on to explain the very purpose of § 924(c) is "to combat the dangerous combination of drugs and guns" by persuading "the man who is tempted to commit a Federal felony to leave his gun at home." *Id.* at 751 (quotations omitted). "Whether guns are used as the medium of exchange for drugs sold illegally or as a means to protect the transaction or dealers, their introduction into the scene of drug transactions dramatically heightens the danger

-7-

to society." *Id.* (quotation omitted). Thus, the lengthy sentences mandated by Congress in § 924(c) are an entirely rational response to this exceptional danger in that such sentences "(a) protect society by incapacitating those criminals who demonstrate a willingness to repeatedly engage in serious felonies while in possession of firearms, and (b) [] deter criminals from possessing firearms during the course of certain felonies." *Id.*

With both the exceedingly narrow nature of proportionality review and the purposes underlying § 924(c) in mind, *Angelos* concluded the fifty-five-plus year sentence imposed in that case was consistent with the Eighth Amendment. *Id.* at 752-53. Although Angelos had merely possessed the weapons during the course of drug transactions, we concluded the "firearms appear to have facilitated [] drug trafficking by, if nothing else, providing protection from purchasers and others," thereby heightening the threat of danger to neighbors, those who happened to be in the vicinity, and society in general. *Id.* at 751. This danger was "momentous enough to warrant the deterrence and retribution of lengthy consecutive sentences" and to conclude the sentences imposed on Angelos were not grossly disproportionate to his crimes. *Id.* at 752 (quotation omitted).

*Angelos* compels the conclusion that Jolley's lengthy sentence does not offend the Eighth Amendment's prohibition against cruel and unusual punishment. Like the defendant in *Angelos*, Jolley's lengthy sentence is mostly attributable to his five § 924(c) convictions. These weapons charges are

exceedingly dangerous crimes, and it is entirely rational for Congress to "severely punish criminals who repeatedly possess firearms in connection with drug-trafficking crimes." *Id.* at 753.

Although Jolley's sentence is more than double the length of the sentence at issue in *Angelos*, his criminal conduct is likewise more egregious than that at issue in *Angelos*. Angelos was convicted of three § 924(c) violations, *id.* at 743, while the jury convicted Jolley of five such violations. As Jolley candidly admits in his brief on appeal, "It is also true that during the entire period [of the drug conspiracy] there is no question that guns were present." Appellant's Brief at 12. Thus, if anything, Jolley's five § 924(c) convictions most likely understate the dangerousness of his conduct during the relevant time period. Furthermore, Angelos simply possessed[6] firearms in connection with his drug trafficking activities, 433 F.3d at 751-52, while Jolley actively employed firearms to recover drug debts. Finally, Angelos "had no significant adult criminal history," *id.* at 753, while Jolley has an extensive criminal history, including a prior criminal conviction involving the active employment of a firearm.

---

[6]By the use of this term, we do not intend to minimize the dangerousness flowing from the possession of weapons during a drug transactions. *United States v. Angelos*, 433 F. 3d at 751-52 (explaining dangers inherent in the proximity of firearms to a drug trafficking crime). Instead, we simply attempt to highlight a qualitative difference in Jolley's active employment of firearms and Angelos's possession of them.

Jolley ran a significant drug distribution enterprise and utilized multiple firearms, including stolen ones, in his day-to-day drug operations. His conduct created a dramatic danger to society. *Id.* at 751. When measured against the high magnitude of potential harm, his lengthy prison sentence is not grossly disproportionate to his crimes even though the sentence is longer than Jolley's reasonable life expectancy. *Id.* at 753. Accordingly, there is no merit to Jolley's Eighth Amendment challenge to his sentence.

## IV. Conclusion

For those reasons set out above, the sentence imposed by the district court is hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge