NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DANIEL NEWTON HEAD, *Appellant.*

No. 1 CA-CR 17-0743
FILED 9-25-2018

Appeal from the Superior Court in Yavapai County
No.  P1300CR201400418
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

Attorneys for Freedom Law Firm, Chandler
By Marc J. Victor
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

**T H O M P S O N**, Judge:

**¶1**        Daniel Head appeals his convictions and sentences for child prostitution.  For the following reasons, we affirm.

### BACKGROUND[1]

**¶2**        As part of an undercover sting operation, police officers posted several online advertisements for prostitution.  Head responded to one of these advertisements by phone and spoke with an undercover detective who was posing as a prostituted child.  Early in their conversation, the detective told Head that she and her "friend," another detective who was referenced in the advertisement, were only sixteen years old.  With apparent surprise, Head questioned whether the "girls" were really age sixteen, and then stated, "that['s] kind of young."  Nonetheless, Head agreed to meet the "girls" at a Prescott hotel and pay them $250 for one hour of sexual activity.

**¶3**        Within minutes of ending his initial call, Head phoned the detective again and cancelled the meeting, explaining the "girls" were simply too young.  After the detective responded that she did not want Head to feel uncomfortable, he inquired whether she would be willing to meet him in his hometown, Flagstaff. Declining the invitation, the detective explained that she only felt comfortable meeting Head at her location. Unable to persuade the "girls" to drive to Flagstaff, Head stated that he would still meet them in Prescott, as previously arranged, but explained he only wanted to talk.

**¶4**        A few hours later, Head arrived at the Prescott hotel.  At the outset, he asked the detectives whether they were law enforcement officers, which they denied.  He then stated that he enjoyed sex and would pay them $250 for one hour.  Once he placed the money on the table, Head asked the

---

[1]        We view the facts in the light most favorable to sustaining the verdicts.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

detectives to remove their clothing. At that point, officers entered from the adjoining hotel room and placed Head under arrest.

**¶5** The state charged Head with two counts of child prostitution. At trial, Head admitted that he had solicited prostitution, but testified he "didn't know what to believe" with respect to the prostitutes' ages, so he drove to Prescott to verify that the prostitutes were indeed minors. Claiming he believed the "girls" were adult prostitutes once he saw the detectives in person, Head explained that he thought they were simply role-playing a child-sex fantasy.

**¶6** After a three-day trial, a jury found Head guilty as charged, and the superior court sentenced him to mitigated, consecutive terms of seven years' imprisonment. Head timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1)(2018), 13-4031(2018), and -4033(A)(1)(2018).

## DISCUSSION

### I. Constitutional Validity of A.R.S. § 13-3212

**¶7** Head contends Arizona's child prostitution statute, "as drafted in 2014" and applicable here, was unconstitutionally vague. Specifically, he argues A.R.S. § 13-3212 (2011) failed to "provide adequate notice" that its internal enhanced sentencing provisions "would apply" to an offense involving "a fictitious minor." Although Head acknowledges the supreme court recently held that A.R.S. § 13-3212's enhanced sentencing provisions apply to offenses involving peace officers posing as minors aged fifteen through seventeen, *State ex rel. Polk v. Campbell*, 239 Ariz. 405 (2016), he argues such a construction was "unforeseeable" and therefore "may not be given retroactive effect."

**¶8** We review the constitutionality of a statute de novo. *State v. McDermott*, 208 Ariz. 332, 335, ¶ 12 (App. 2004). "When a statute is challenged as vague, we presume that it is constitutional," and the complaining party bears the burden of "demonstrating the statute's invalidity." *Id.* at 335-36, ¶ 12.

**¶9** "A statute is void for vagueness if it fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly." *State v. Burbey*, 243 Ariz. 145, 149, ¶ 15 (2017) (internal quotations omitted). "Such laws violate due process because they fail to provide fair warning of criminal conduct and do not

provide clear standards to law enforcement to avoid arbitrary or discriminatory enforcement." *Id.*

¶10 "Due process does not require, however, that a statute be drafted with absolute precision." *State v. Burke*, 238 Ariz. 322, 326, ¶ 6 (App. 2015) (internal quotation omitted). "It requires only that the language of a statute convey a definite warning of the proscribed conduct." *Id.* Accordingly, a statute is not void for vagueness "because it can be interpreted in more than one way." *McDermott*, 208 Ariz. at 336, ¶ 13.

¶11 We review questions of statutory interpretation de novo. *Polk*, 239 Ariz. at 406, ¶ 4. When the language of a statute is clear, "we need not look further to determine the statute's meaning and apply its terms as written." *State v. Lee*, 236 Ariz. 377, 383, ¶ 16 (App. 2014). If statutory language is ambiguous, though, we consider the statute's history, subject matter, and purpose. *Taylor v. Cruikshank*, 214 Ariz. 40, 43, ¶ 10 (App. 2006). We also construe a statute in light of other statutes that relate to the same subject matter, "as though they constituted one law." *State ex rel. Thomas v. Ditsworth*, 216 Ariz. 339, 342, ¶ 12 (App. 2007) (internal quotation omitted).

¶12 As set forth in A.R.S. § 13-3212(B)(2) and charged in this case, a person committed child prostitution by knowingly engaging in prostitution with a minor "who the person kn[ew] [wa]s fifteen, sixteen or seventeen years of age." 2011 Ariz. Sess. Laws, ch. 78, § 1. Subsection (C) provided, that in such a circumstance, it was "not a defense to a prosecution" that the victim of the offense was in fact "a peace officer posing as a minor." 2011 Ariz. Sess. Laws, ch. 78, § 1. Thus, reading subsections (B)(2) and (C) together, the requisite element of "know[ing]" that a minor [wa]s fifteen, sixteen or seventeen years of age was satisfied when the "minor" was in fact an adult peace officer posing as a minor aged fifteen to seventeen. Accordingly, in raising his claim, Head does not contest his convictions for child prostitution. Instead, he challenges only the application of the statutory sentencing enhancement to this case, because no actual minor was endangered.

¶13 In proscribing child prostitution, A.R.S. § 13-3212 outlined dual sentencing provisions that were differentiated by the age of the minor victim. A.R.S. § 13-3212(E)-(H) (2013); 2011 Ariz. Sess. Laws, ch. 78, § 1. As relevant here, when "the minor [wa]s fifteen, sixteen or seventeen years of age, child prostitution pursuant to . . . subsection B, paragraph 2 . . . [wa]s a class 2 felony," and the minimum sentence for a first offense was a term of seven years' imprisonment, "consecutive to any other sentence imposed

on the person at any time."  A.R.S. § 13-3212(D), (G)(1) (2013); 2011 Ariz. Sess. Laws, ch. 78, § 1.

¶14      Arguing subsections (D) and (G)(1), by their express terms, applied only when a minor was *actually* fifteen, sixteen or seventeen years old, Head contends A.R.S. § 13-3212 did not provide notice that its enhanced sentencing provisions could apply to violations involving an adult peace officer posing as a fictitious child.  This reading of the statute is inconsistent with subsection (C), however, which focused on the culpability of the perpetrator rather than the harm to a minor victim.  Head's construction also undermines the overall purpose of the statute, namely, to deter persons from causing, enabling, or soliciting child prostitution, and to punish those who do.  As recognized by our supreme court, the precise wording of A.R.S. § 13-3212(G) arguably lent itself to more than one interpretation, *see Polk*, 239 Ariz. at 407, ¶ 8, and subsection (C) expressly foreclosed only defenses to prosecution without reference to punishment.  However, given the statute's purpose, and reading the individual subsections within the broader context of the entire statutory scheme, solicitation of child prostitution, even from an adult peace officer, was clearly both proscribed and subjected to enhanced punishment. *See State v. Takacs*, 169 Ariz. 392, 395 (App. 1991) (explaining a statute is not unconstitutionally vague "simply because it is susceptible to more than one interpretation" or "could have been written with greater precision").  Because the statute adequately notified the proscribed conduct and the corresponding penalties, it was not so indefinite as to be considered constitutionally invalid, and Head has therefore failed to show that the challenged statutory language rendered the statute void for vagueness.

## II.      Constitutionality of Sentence

¶15      Head asserts the cumulative length of his sentence, fourteen years, is grossly disproportionate to the crimes he committed and therefore in violation of the constitutional protections against cruel and unusual punishment.  Noting that no actual minor was harmed by his conduct and he would have been eligible for a far less onerous penalty under the statutory scheme proscribing adult prostitution, Head contends the gravity of his offenses is not commensurate with a fourteen-year sentence.

¶16      Because Head failed to raise this claim in the superior court, we review only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005).  We review de novo, however, whether a sentence constitutes cruel and unusual punishment, and the imposition

of an illegal sentence constitutes fundamental error. *State v. Kasic*, 228 Ariz. 228, 231, ¶ 15 (App. 2011).

**¶17**      As previously noted, under A.R.S. § 13-3212(D), a sentence for a subsection (B)(2) violation was mandated "consecutive to any other sentence imposed on the person at any time." 2011 Ariz. Sess. Laws, ch. 78, § 1. Likewise, A.R.S. § 13-3212(G) provided that the minimum sentence for a first-time offense under A.R.S. § 13-3212(B)(2) was a term of seven years' imprisonment. 2011 Ariz. Sess. Laws, ch. 78, § 1. Thus, applying these statutory provisions to this case, Head's sentences for child prostitution were mandated consecutive, and the seven-years' term of imprisonment imposed by the superior court for each count was the minimum sentence permitted by law.

**¶18**      The Eighth Amendment to the United States Constitution, barring the infliction of "cruel and unusual punishments," has been applied to lengthy prison sentences, but "noncapital sentences are subject only to a narrow proportionality principle that prohibits sentences that are grossly disproportionate to the crime." *State v. Berger*, 212 Ariz. 473, 475, 477, ¶¶ 8-10, 17 (2006) (internal quotations omitted). Accordingly, "only in exceedingly rare cases will a sentence to a term of years violate the Eighth Amendment's prohibition on cruel and unusual punishment." *Id.* at 477, ¶ 17 (internal quotations omitted).

**¶19**      In reviewing the constitutionality of a sentence, we first determine whether "there is a threshold showing of gross disproportionality by comparing the gravity of the offense [and] the harshness of the penalty." *Id.* at 476, ¶ 12 (internal quotation omitted). "If this comparison leads to an inference of gross disproportionality," we then "test[] that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime." *Id.*

**¶20**      When evaluating whether a sentence is excessive, courts "must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences." *Id.* at ¶ 13. In so doing, a court must "determine whether the legislature has a reasonable basis for believing that [a sentencing scheme] advance[s] the goals of [its] criminal justice system in a substantial way." *Id.* at 477, ¶ 17 (internal quotation omitted). "A prison sentence is not grossly disproportionate, and a court need not proceed beyond the threshold inquiry, if it arguably furthers the state's penological goals and thus reflects a rational legislative judgment, entitled to deference." *Id.* (internal quotation omitted).

**¶21** In comparing the gravity of a crime and the severity of the punishment, we consider whether "the sentence imposed for each specific crime" is excessive, not the cumulative sentence. *Id*. at 479, ¶ 28. Stated differently, because a defendant does not have a constitutional right to concurrent sentences for separate crimes, we "will not consider the imposition of consecutive sentences in a proportionality inquiry." *Id*. at ¶ 27. "Thus, if the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Id*. at ¶ 28.

**¶22** As applied to these facts, we cannot say that a sentence of seven years' imprisonment is grossly disproportionate to the crime of child prostitution. Moreover, a broad interpretation of A.R.S. § 13-3212's enhanced sentencing provisions furthers the state's legitimate interest in deterring the prostitution of children, even though some violations may not involve *actual* minors. *See id*. at 477, ¶ 19 (affirming harsh penalties for child pornography because "the legislature must be permitted to 'stamp out this vice at all levels in the distribution chain.'" (quoting *Osborne v.* Ohio, 495 U.S. 103, 110 (1990)). Therefore, because the individual sentences are not disproportionately long, and we do not consider the cumulative sentence in the proportionality inquiry, we conclude Head's sentences were not "clearly excessive" in violation of the constitutional proscription against cruel and unusual punishment. *See id*. at ¶ 28 ("Eighth amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence.") (internal quotation omitted).

### III.    Continuing Validity of *Polk*

**¶23** Relying on the supreme court's recent opinion in *Wright v. Gates*, 243 Ariz. 118, 121-22, ¶¶ 13, 18 (2017), which held that enhanced sentences may not be imposed under the dangerous crimes against children statute absent an actual child victim, Head argues that "offenses in violation of A.R.S. § 13-3212 involving a fictitious child under the age of fifteen" may not be enhanced as prescribed by subsections (E) and (F). Working from this premise, he further contends that application of subsections (D) and (G) to offenses involving a peace officer posing as a minor aged fifteen to seventeen renders an absurd result, namely, perpetrators soliciting prostitution from an adult peace officer posing as an older child are punished more severely than perpetrators soliciting prostitution from an adult peace officer posing as a younger child.

**¶24** Whether a defendant in another case involving a fictional child under the age of fifteen would be sentenced more leniently than Head is not a question before us. Head's crimes put him squarely within the provisions of A.R.S. § 13-3212(D) and (G) and *Polk* prescribes his sentencing pursuant to those subsections.

## CONCLUSION

**¶25** For the foregoing reasons, we affirm the convictions and sentences.

