IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JOSE ADRIAN AGUNDEZ-MARTINEZ, *Appellant*.

No. 1 CA-CR 21-0369
FILED 2-7-2023

---

Appeal from the Superior Court in Yuma County
No. S1400CR201900622
The Honorable Roger A. Nelson, Judge

**CONVICTIONS AND SENTENCES VACATED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Zavala Law Offices LLC, Scottsdale
By Dori L. Zavala
*Counsel for Appellant*

---

**OPINION**

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Jose Adrian Agundez-Martinez appeals from his convictions and sentences for two counts of sexual conduct with a minor, two counts of child molestation, and one count of attempted child molestation. He argues, among other things, that the State does not have the statutory authority to prosecute him as an adult, and his sentences violate the Eighth Amendment's prohibition of cruel and unusual punishment. Because Agundez-Martinez's actions constituted delinquent acts, and he could not be prosecuted as an adult consistent with Arizona statutes, we vacate his convictions and resulting sentences and order his release.

¶2        We also address Agundez-Martinez's Eighth Amendment argument to avoid unnecessary delay should our supreme court disagree with our statutory analysis. Because the State charged and sentenced Agundez-Martinez as an adult based only on his age at the time of prosecution, we hold that his sentences violate the Eighth Amendment. As a result, we would vacate his sentences and remand for a new sentencing hearing. We also hold that Agundez-Martinez's cumulative sentence of 51 years is grossly disproportionate to the offenses committed, considering his age on the date of the offenses, and thus violates the Eighth Amendment. We would also vacate his sentences and remand for a new sentencing hearing on this ground.

### FACTS[1] AND PROCEDURAL BACKGROUND

¶3        Agundez-Martinez was born in March 1996. Between 2005 and 2009, when he was between ages 10 and 12, his mother regularly babysat three children who lived in the same neighborhood: Michael,[2] born

---

[1]        We view the facts in the light most favorable to affirming the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]        We refer to the victims by pseudonyms to protect their identities.

April 2003; Amy, born January 1999; and Amy's sister Cate, born November 2004. During that time, Agundez-Martinez engaged in various sexual acts with the victims.

¶4        Twice in 2008, Agundez-Martinez anally penetrated Michael. During one incident, he persuaded Michael to come to his bedroom, locked the door, ordered Michael to remove his pants, and anally penetrated Michael with his penis. On the other occasion, he again instructed Michael to enter his bedroom, where he anally penetrated him with his penis.

¶5        During the summer before Amy started fourth grade, Agundez-Martinez began touching her inappropriately. First, he rubbed her chest, and "from there, it slowly progressed to him going under [her] pants" and "put[ting] his hands on [her] vagina." He eventually forced her to perform oral sex on him while playing a game.

¶6        When Cate was four years old, Agundez-Martinez asked her to go to his bedroom. Once there, he directed her to pull down her pants and get on his bed. Then, he placed "his penis next to [her] vagina," and she soon felt a wet substance on her.

¶7        A decade later, in November 2018, Michael disclosed the incidents to his mother, who reported them to the police. Following Michael's disclosure, Amy and Cate told their mother that Agundez-Martinez had also abused them. When arrested and questioned, Agundez-Martinez admitted that he had engaged in anal sex with Michael and exposed his penis to Cate. He also admitted that Amy had performed oral sex on him, and he had touched Amy's breasts, buttocks, and vagina.

¶8        The State charged Agundez-Martinez, who was then 23 years old, for sexual conduct with a minor via penile penetration of Michael's anus, a class two felony (Count One); child molestation for touching Michael's anus before anally penetrating him on the other occasion (Count Two); child molestation for oral sexual contact with Amy, a class two felony (Count Three); child molestation for fondling Amy under her clothing, a class two felony (Count Four); and attempted child molestation for placing his penis next to Cate's vagina, a class three felony (Count Five).[3] And the

---

[3]        Following its case-in-chief, the superior court granted the State's motion to amend count five from the charged offense of child molestation to attempted child molestation.

State alleged that the offenses constituted dangerous crimes against children ("DCAC"). *See* A.R.S. § 13-705.

¶9 Before the trial, Agundez-Martinez moved to dismiss the charges, arguing that the superior court did not have jurisdiction over his prosecution as an adult because he was between the ages of 10 and 12 at the time of the offenses. The State responded that because the juvenile court loses jurisdiction when a defendant turns 18, and Agundez-Martinez was charged when he was 23, the superior court had personal jurisdiction over Agundez-Martinez. The superior court denied the motion.

¶10 The jury found Agundez-Martinez guilty. At a pre-sentencing hearing, Agundez-Martinez relied on *State v. Kleinman*, 250 Ariz. 362 (App. 2020), to argue that based on his young age when he committed the crimes, imposing a DCAC-enhanced sentence would constitute cruel and unusual punishment. The court found that *Kleinman* was distinguishable because the State agreed that the sentence was excessive in *Kleinman*. The court determined it lacked the authority to disregard the mandatory DCAC sentencing provisions.

¶11 The superior court sentenced Agundez-Martinez under the DCAC statute to consecutive, mitigated prison terms on all counts, totaling 51 years.[4] Agundez-Martinez appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

**A.     The State Lacks the Authority to Prosecute Adult Criminal Charges in Adult Court Against an Individual for Acts Committed When the Individual Was Younger than 14 Unless It Petitions for Transfer Under A.R.S. § 8-327.**

¶12 Given the issues raised in the appellate briefs, this court ordered supplemental briefing on whether the State could prosecute adult criminal charges against Agundez-Martinez for acts committed when he was younger than 14 years old. Agundez-Martinez argues that because he

---

[4]     The superior court later issued an order permitting Agundez-Martinez to submit an early petition to the Arizona Board of Executive Clemency for commutation of his sentences, *see* A.R.S. § 13-603(L), noting the sentences are "clearly excessive under the facts of this case." The Board denied Agundez-Martinez's clemency request.

was between 10 and 12 years old when he committed the acts, the State could charge him only with "delinquent acts" under A.R.S. § 8-201(12), but not adult criminal offenses. The State responds that it may prosecute an adult for crimes committed as a juvenile, no matter how old the juvenile was when the offenses were committed. Because Agundez-Martinez was 23 when charged, the State argues there is no prohibition against charging Agundez-Martinez as an adult. But the State does not offer a statutory basis for its assertion.

¶13        We interpret "statutes to give effect to the legislature's intent." *State v. Allen*, 253 Ariz. 306, 313, ¶ 87 (2022) (quoting *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383, ¶ 8 (2013)). If the "language is clear and unambiguous, and thus subject to only one reasonable meaning, we apply the language without using other means of statutory construction." *Id.* But if the language is ambiguous, we may determine its meaning by considering other factors, such as the statute's historical background and its effects, consequences, spirit, and purpose. *Id.*

¶14        In Arizona, juvenile delinquencies and adult criminal offenses are solely defined by statute. *See* A.R.S. § 13-103(A) ("All common law offenses and affirmative defenses are abolished."); A.R.S. § 8-202(A) ("The juvenile court has original jurisdiction over all delinquency proceedings brought under the authority of this title."). Arizona Revised Statutes Section 8-201(12) provides that, with specific exceptions not applicable here, a "[d]elinquent act" is "an act by a juvenile that if committed by an adult would be a criminal offense." A.R.S. § 8-201(12); *see also* A.R.S. § 8-201(6) (A juvenile is "an individual who is under eighteen years of age."). The specific exceptions apply only to offenders who are "at least fourteen years of age at the time the alleged offense is committed." A.R.S. § 13-501(B).

¶15        Two things are clear from the plain language. First, delinquent acts are different than criminal offenses. The legislature chose to use conditional language to define a "delinquent act" as an act that "*would be* a criminal offense" "*if* committed by an adult." A.R.S. § 8-201(12) (emphasis added). If the legislature intended "delinquent act" to mean a criminal offense committed by a juvenile (someone younger than 18), it would have said so. We cannot ignore the addition of the conditional language. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019) (We must "give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."). Delinquent acts are thus not criminal offenses. *See also David. G. v. Pollard ex rel. County of Pima*, 207 Ariz. 308, 312,

¶ 19 (2004) (citing the definition of "delinquent act" for the proposition that acts committed by a juvenile "are not criminal offenses").

**¶16** Second, whether the conduct is a delinquent act depends on the offender's age at the time of the conduct. For conduct to be a delinquent act, it must be committed "by a juvenile." A.R.S. § 8-201(12). The same conduct "would be a criminal offense" if it were "committed by an adult." *Id.* The exceptions to the rule explicitly apply to offenders who are "at least fourteen years of age *at the time the alleged offense is committed*." A.R.S. § 13-501(B) (emphasis added). As a result, by statute, whether an act is a "delinquent act" depends on the juvenile's age at the time of the conduct.

**¶17** That said, the State contends it may bring adult criminal charges against Agundez-Martinez because he was 23 years old at the time of filing. The State argues that the juvenile court loses jurisdiction over an individual when the individual reaches 18, which precludes the State from filing delinquency proceedings and thus requires the filing of adult criminal charges. The State relies on Arizona appellate decisions interpreting different statutory language.

**¶18** Our supreme court first addressed a similar issue in *Burrows v. State*, 38 Ariz. 99 (1931), *overruled in part on other grounds by State v. Hernandez*, 83 Ariz. 279 (1958). In *Burrows*, the defendant asserted he was under the age of 18 when he killed the victim. 38 Ariz. 99, 105–06. At that time, the statutes required courts to hold transfer hearings for "children accused of crime under the age of eighteen years." *Id.* at 106. Without such a hearing, the superior court determined that the defendant was 19 when the information was filed and could be charged as an adult with a crime without a transfer hearing. *Id.* The defendant contended on appeal that a hearing was required for any individual to be charged as an adult with a crime when the individual was under 18 at the time of the conduct. *Id.* at 107.

**¶19** The supreme court disagreed, holding "that the purpose of the Arizona juvenile law is not to attempt to establish an arbitrary age below which the child is presumed to be ignorant of the consequences of his acts, but rather to provide a special method of treatment for minors." *Burrows*, 38 Ariz. at 111. The court reasoned that "[t]he general experience of mankind teaches us that the ordinary child of seventeen years of age . . . has full capacity to distinguish between right and wrong[,]" and absent clear legislative intent, "we cannot presume [the legislature] meant to lay down an arbitrary rule in regard to criminal capacity so contrary to human experience." *Id.* Because the defendant conceded he was over 18 years old

at the time of filing, the court held that it was "immaterial" that the court did not follow the proper juvenile procedure. *Id.*

¶20 Nearly 45 years later, our supreme court addressed a similar issue in *McBeth v. Rose*, 111 Ariz. 399 (1975). Three individuals were alleged to have committed unlawful conduct when they were 17, and the State filed delinquency petitions in juvenile court. *Id.* at 400. After the individuals turned 18, the State dismissed the juvenile petitions and refiled the charges in adult criminal court. *Id.* The defendants challenged the State's actions, arguing that the juvenile court retained exclusive jurisdiction absent a transfer hearing. *Id.* at 400, 403. The supreme court denied relief, holding that when a defendant "is no longer a child under the age of eighteen the juvenile court has no jurisdiction to try him." *Id.* at 402. The court reiterated that

> [i]n effect, *Burrows* held that a juvenile could commit a crime, and his age made it no less a crime, but the law provided a special method of dealing with such a person by reason of his age. This age factor was to be determined as of the time of prosecution. If the age factor was not present at the time of prosecution the accused was to be tried as an adult.

*Id.* The court ultimately found "no sufficient reason to invalidate the procedure" of dismissing the juvenile petitions and refiling criminal charges in adult court. *Id.* at 403; *see also State v. Marks*, 186 Ariz. 139, 142 (1996) (A "faulty transfer [from the juvenile division to the adult criminal division] does not deprive the superior court of subject matter jurisdiction over the crime.").

¶21 But in 1996, Arizona voters passed Proposition 102—the Juvenile Justice Initiative—which amended part of the Arizona Constitution and included new provisions about the prosecution of juveniles. *In re Cameron T.*, 190 Ariz. 456, 461–62 (App. 1997). Proposition 102 changed our constitution to read:

> Juveniles 15 years of age or older accused of murder, forcible sexual assault, armed robbery or other violent felony offenses as defined by statute shall be prosecuted as adults. Juveniles 15 years of age or older who are chronic felony offenders as defined by statute shall be prosecuted as adults. . . . *All other juveniles accused of unlawful conduct shall be prosecuted as provided by law.*

7

Ariz. Const. art. 4, pt. 2, § 22 (emphasis added). Following the constitutional changes, the legislature enacted A.R.S. § 13-501(A), which required the State to prosecute older juveniles as adults if they commit certain serious offenses. S.B. 1446, 1997 Leg., 43d Legis., 1st Reg. Sess. (Ariz. 1997); *see also Andrews v. Willrich*, 200 Ariz. 533, 534, ¶ 1 (App. 2001). The statutory changes also allow the State to bring certain felony charges in adult criminal court against a juvenile "at least fourteen years of age at the time the alleged offense [was] committed." A.R.S. § 13-501(B). And the legislature amended the definition of "delinquent act" to clarify that it "does not include an offense under section 13-501, subsection A or B if the offense is filed in adult court." A.R.S. § 8-201(12).

¶22        By adopting the Juvenile Justice Initiative, "voters clearly intended . . . to respond more stringently to juvenile crime *when appropriate*." *Cameron T.*, 190 Ariz. at 550 (emphasis added). The legislature determined that it is appropriate to respond to juvenile misconduct more harshly if the conduct is more serious and the juvenile is older when the alleged offense is committed. *See* A.R.S. § 13-501(A), (B). But the legislature also determined that it is inappropriate to define any other unlawful juvenile conduct as a criminal offense. The legislature explicitly excepted from the definition of "delinquent act" offenses under A.R.S. § 13-501(A) and (B). A.R.S. § 8-201(12). The legislature has not provided that any "act by a juvenile" is a criminal offense "if the offense is filed in adult criminal court." And if the legislature had intended for any "act by a juvenile" to be a criminal offense "if the offense is filed in adult court," it would have been superfluous to specifically except the offenses under A.R.S. § 13-501. *See Nicaise*, 245 Ariz. at 568, ¶ 11.

¶23        How juvenile conduct is to be prosecuted is also evidenced by changes to the juvenile charging and transfer statutes. Juvenile prosecutions are commenced under A.R.S. § 8-301 by the county attorney's petition or a transfer "from another court as provided in § 8-302." None of the transfer provisions allow for the prosecution of adult charges for the acts committed by Agundez-Martinez. Arizona Revised Statutes Section 8-302(A) provides that if a court determines during an adult prosecution that the defendant is a juvenile "not subject to prosecution as an adult pursuant to § 13-501, the court shall transfer the case to the juvenile court . . . [and] [t]he juvenile court shall then proceed with all further proceedings as if a petition alleging delinquency had been filed." And A.R.S. § 8-302(C) provides that if a juvenile petition includes a charge "for which the juvenile is subject to prosecution as an adult pursuant to § 13-501" the court "shall dismiss" the charge to allow an adult filing.

¶24        Finally, A.R.S. § 8-202(I) provides:

> Persons who are under eighteen years of age shall be prosecuted in the same manner as adults if either:
>
>> 1.        The juvenile court transfers jurisdiction pursuant to § 8-327.
>>
>> 2.        The juvenile is charged as an adult with an offense listed in § 13-501.

Here, because the State did not prosecute Agundez-Martinez until he became an adult, the State could not file a juvenile petition alleging delinquencies under A.R.S. § 8-301 nor request a transfer from juvenile court to adult criminal court under A.R.S. § 8-327. And as explained above, Agundez-Martinez does not qualify for adult court prosecution under A.R.S. § 13-501. *See* A.R.S. § 8-201(4) ("Adult court means the appropriate . . . superior court that has jurisdiction to hear proceedings concerning offenses committed by juveniles as provided in §§ 8-327 and 13-501.").

¶25        The result of the legislature's statutory changes is that an offensive "act by a juvenile" is a "delinquent act" unless it is enumerated in A.R.S. § 13-501(A) or (B). Neither subsection criminalizes the conduct of an individual younger than "fourteen years of age at the time the alleged offense is committed." A.R.S. § 13-501(A), (B). We, therefore, hold that any act committed by a juvenile under the age of 14 "that if committed by an adult would be a criminal offense" is, by definition, a delinquent act and thus not a criminal offense and may be prosecuted only in the juvenile court or transferred to adult court under A.R.S. § 8-327.[5]

¶26        Because delinquent acts may only be prosecuted in juvenile court or transferred to adult criminal court via A.R.S. § 8-327, the State cannot prosecute Agundez-Martinez for these offenses now that he has reached adulthood. *See* A.R.S. § 8-246 (The juvenile court loses jurisdiction when a defendant becomes an adult.). The State contends this is an "absurd" and "irrational" result, arguing that A.R.S. § 8-327 shows the legislature's intent to allow adult prosecution of juveniles under 14.

---

[5]        We note that unlike A.R.S. § 13-501(A) and (B), subsections (C) through (E) impose no age applicability for juveniles who have a prior felony conviction or are a "chronic felony offender." The State did not allege either against Agundez-Martinez, so we do not address the statute's application further.

¶27        The State interprets the statute too broadly. Under A.R.S. § 8-327, the State may ask the juvenile court to transfer a case to adult court. When determining whether to transfer the case, the juvenile court must consider several factors, including "[t]he likelihood of the juvenile's reasonable rehabilitation." A.R.S. § 8-327(D)(10). The directive advances "[t]he main objective of the juvenile court system," which "is the protection and rehabilitation of the juvenile." *Ariz. Dep't of Econ. Sec. v. Gerald F.*, 190 Ariz. 190, 201 (App. 1997). Thus, the legislative scheme assumes that delinquent juveniles under 14 need rehabilitation but allows the juvenile court to determine which juveniles eligible for transfer should be prosecuted as adults—especially those unlikely to be rehabilitated.

¶28        Contrary to the State's contention, A.R.S. § 8-327 does not show that the legislature intended to allow direct adult prosecution against an adult defendant who committed offenses when he was younger than 14. The legislature has determined that delinquent juveniles under 14 require rehabilitation. But our legislature's enactments signify that rehabilitation is not a focus of the adult criminal justice system. *See* A.R.S. §§ 13-101, -101.1 (Rehabilitation is not a stated goal of the Arizona adult criminal justice system.). Based on the present legislative scheme, the time to rehabilitate Agundez-Martinez has passed. And nothing in our statutes shows that the legislature intended for the mere passage of time to transform delinquent acts into criminal offenses with adult consequences. Our holding, therefore, does not lead to an absurd or irrational result.

¶29        Nor is this holding inconsistent with our supreme court's precedent. In *Burrows*, the supreme court determined that the juvenile code's procedural protections did not apply to a defendant over 18 years old at the time of filing. 38 Ariz. at 111. And in *McBeth*, the court held that the juvenile court loses jurisdiction over a defendant when the defendant reaches 18. 111 Ariz. at 402. Neither case interpreted our current statutes.

¶30 Our holding does not turn on procedural protections or the court's jurisdiction.[6] Chapter 5 of Title 13 contains the responsibility sections of the criminal code outlining who may or may not be responsible for criminal conduct. *See* A.R.S. § 13-502 (Insanity) and A.R.S. § 13-503 (Effect of Alcohol or Drug Use). Under A.R.S. § 13-501 of that chapter, the legislature authorized charging some juveniles for adult felony prosecutions. Our holding reflects that the legislature has excluded the acts of juveniles younger than 14 from those categorized as criminal for adult prosecution unless the case is transferred under A.R.S. § 8-327.

¶31 The State charged Agundez-Martinez with five criminal offenses committed when he was between 10 and 12 years old. The acts charged would be criminal offenses "if committed by an adult." *See* A.R.S. § 8-201(12). But because they were committed "by a juvenile" and are not offenses under A.R.S. § 13-501(A) or (B), they are instead delinquent acts. His adult convictions and sentences for these offenses cannot stand, and we vacate them.

## B. Sentencing an Individual as an Adult for a Nonhomicide Offense Committed When the Individual Was Between 10 and 12 Is Cruel and Unusual Punishment.

¶32 Agundez-Martinez also argues that his convictions and sentences violate the United States Constitution's prohibition of cruel and unusual punishment.[7] This case presents a question of constitutional

---

[6] Agundez-Martinez raised a personal jurisdiction issue in a special action petition before the trial. In an unpublished order, this court accepted jurisdiction and denied relief finding the superior court had personal jurisdiction. The court did not address the applicability of the statutory changes to the State's ability to bring adult criminal charges. The State attempts to avoid the statutory changes by claiming our holding is "law of the case." The issue decided in this opinion, however, was not decided in the special action.

[7] Agundez-Martinez argues specifically under the Eighth Amendment to the United States Constitution. We note that there is no "compelling reason to interpret Arizona's cruel and unusual punishment provision differently." *State v. Davis*, 206 Ariz. 377, 381 (2003); Ariz. Const. Art. 2 § 15.

interpretation, which we review *de novo*. *State v. Soto-Fong*, 250 Ariz. 1, 4, ¶ 6 (2020).

¶33　　　The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The prohibition "guarantees individuals the right not to be subjected to excessive sanctions." *Roper v. Simmons*, 543 U.S. 551, 560 (2005). This right stems from the basic principle that criminal punishment should be proportional "to both the offender and the offense." *Miller v. Alabama*, 567 U.S. 460, 469 (2012). Indeed, "[t]he concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010).

¶34　　　In recent cases, the United States Supreme Court has applied the proportionality principle to hold that the Eighth Amendment forbids sentencing practices that produce "mismatches between the culpability of a class of offenders and the severity of a penalty." *Miller*, 567 U.S. at 470 (citing *Graham*, 560 U.S. at 60–61). These cases "specially focused on juvenile offenders, because of their lesser culpability" and "emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders." *Id.* at 470, 472.

¶35　　　Like the cases decided by the Supreme Court, this case involves a juvenile offender. But more specifically, and unlike those cases, the defendant here was a preadolescent juvenile, only 10 to 12 when he committed his offenses.[8] And the defendant faced the adult sentencing scheme *only* because the State began the prosecution when he was an adult. Thus, this case presents whether a state's sentencing scheme may subject a preadolescent juvenile offender to adult sentencing only because the offender was an adult when the State filed the charges.

¶36　　　Because the first cruel and unusual punishment question presented is a categorical challenge, the analysis typically "begins with objective indicia of national consensus." *Graham*, 560 U.S. at 62. And

---

[8]　　　Preadolescence refers to "the period of childhood preceding adolescence, comprising approximately the 2 years preceding the onset of puberty." *Preadolescence*, APA Dictionary of Psych., https://dictionary.apa.org/preadolescence (last visited Feb. 2, 2023); *see also* Kirsten Weir, *The Risks of Earlier Puberty*, Am. Psych Ass'n, Monitor on Psych., https://www.apa.org/monitor/2016/03/puberty (last visited Feb. 2, 2023) (Puberty typically begins between 8 and 13 for girls and between 9 and 14 for boys.).

usually, the most reliable objective indicia are legislative enactments in various jurisdictions. *Id.* But here, a nationwide survey of different jurisdictions' statutes reveals little to answer the narrow issue.

¶37        For example, some states have enacted laws that provide a minimum age for criminal responsibility. *See, e.g.*, N.Y. Penal Law § 30.00 (McKinney 2021) (A person must be at least 13 when the offense is committed to be criminally responsible.); Or. Rev. Stat. § 161.290 (A person tried as an adult is not responsible for conduct committed when he was under 12.). But when that minimum is lower or nonexistent, those statutes alone do not answer whether a preadolescent offender may be prosecuted as an adult only because he is now an adult.

¶38        Some state laws explicitly account for a scenario in which an adult is charged with a crime committed when the individual was a juvenile. Still, these generally require hearings and grant discretion to the trial court. *See, e.g.*, N.H. Rev. Stat. Ann. § 628:1(III) (A person charged after he becomes an adult for an offense committed when he was between 13 and 15 may be held criminally responsible based on a hearing that considers several factors.); Idaho Code § 20-508 (A person charged after he becomes an adult for an offense committed when he was a juvenile may be held for criminal proceedings after a full investigation and hearing.).

¶39        Similarly, many states, like Arizona, have transfer statutes that allow courts to transfer preadolescent juveniles to adult court. *See, e.g.*, Colo. Rev. Stat. § 19-2.5-802(1)(a)(I)(A) (The court may transfer a juvenile who was as young as 12 at the time of the offenses to adult court for certain crimes.). One may believe that if a state allows a 12-year-old to be tried as an adult, it will allow an adult to be tried as an adult for offenses committed when he was 12 years old. But these transfers also often require hearings and grant discretion to the court. *See, e.g.*, Colo. Rev. Stat. § 19-2.5-802(1)(a)(II), (1)(b) (The court may order a juvenile to be tried as an adult after an investigation and a hearing.). Again, these statutes fail to clarify whether a preadolescent offender may be charged in adult court based solely on his age at the time of filing.

¶40        Some state courts have interpreted their jurisdictional statutes to explain that those who committed crimes as juveniles but are now adults may fall within an adult criminal court's jurisdiction. *See, e.g.*, *State v. Parks*, 803 N.W.2d 761 (Neb. 2011) (applying Neb. Rev. Stat. § 43-247). But defining the jurisdictional limits of a juvenile court still does not answer whether the state can subject a preadolescent offender to an adult criminal charge and, if convicted, an adult criminal sentencing scheme only because

of his age at filing. Moreover, even if it could be said that these legislatures intend for all adult defendants to fall under the adult court's jurisdiction, thus making adult sentencing "at least theoretically applicable to such defendants[,] . . . it does not necessarily follow that the legislatures in those jurisdictions have deliberately concluded that it would be appropriate to impose" adult sentences on a preadolescent offender. *See Thompson v. Oklahoma*, 487 U.S. 815, 850 (1988) (O'Connor, J., concurring).

¶41        The legislative review thus fails to show a national consensus for or against the conviction and sentencing practice in such cases. We, therefore, turn to "measures of consensus other than legislation." *Graham*, 560 U.S. at 62 (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 433 (2008)). "Actual sentencing practices are an important part of [our] inquiry into consensus." *Id.* And a review of the sentencing practices across the country discloses a national consensus against the practice employed in this case. Remarkably, this court is aware of only one case upholding the conviction and sentence of an offender who committed a nonhomicide crime when younger than 13 years old but faced an adult sentencing scheme just because of his age at the time of prosecution. *Commonwealth v. Martz*, 232 A.3d 801 (Pa. Super. Ct. 2020).[9] In another factually similar case, this court vacated the sentences. *State v. Kleinman*, 250 Ariz. 362 (App. 2020).[10] In a

---

[9]        Martz was charged when he was 28 years old with sex crimes committed while he was between 11 and 17 years old. *Martz*, 232 A.3d at 805. He challenged his capacity to commit any crimes before the age of 14, but after a hearing the trial court found, and the appellate court upheld, that there was enough evidence of his capacity at those ages. *Id.* at 806–07, 814–16. He raised no Eighth Amendment claim. *Martz* is distinguishable from the case before us because, although the defendant was convicted for crimes committed while he was as young as 11, he continued his offensive conduct well into adolescence.

[10]        Kleinman was charged when he was 20 years old with sex crimes committed while he was 12 or 13 years old. *Kleinman*, 250 Ariz. at 363, ¶¶ 2–3. This court vacated on Eighth Amendment grounds and remanded for resentencing. *Id.* at 366, ¶ 17.

third, the defendant pled guilty and received a sentencing alternative. *State v. Kassner*, 427 P.3d 659 (Wash. Ct. App. 2018).[11]

¶42 Thus, it is "exceedingly rare" to subject a preadolescent nonhomicide offender to an adult sentencing scheme only because the offender has reached the age of majority by the time the charges are filed. *See Graham*, 560 U.S. at 67. It is, therefore, "fair to say that a national consensus has developed against it." *Id.* (quoting *Atkins v. Virginia*, 536 U.S. 304, 316 (2002)).

¶43 Yet, because "the task of interpreting the Eighth Amendment remains our responsibility," *Roper*, 543 U.S. at 575, a national consensus is not determinative, and the inquiry cannot stop there, *Graham*, 560 U.S. at 67. We must also ask "whether the challenged sentencing practice serves legitimate penological goals." *Id.*

¶44 A legislature may choose which penological goals justify its sentencing practice. *Graham*, 560 U.S. at 71 (citing *Harmelin v. Michigan*, 501 U.S. 957, 999 (1991) (Kennedy, J., concurring)). In Arizona, the legislature employs the retribution rationale, having chosen to impose "just and deserved punishment" on adult offenders. A.R.S. § 13-101(6). It also uses the deterrence rationale, ensuring public safety through "the deterrent influence of the sentences authorized." A.R.S. § 13-101(5). As noted above, rehabilitation is *not* a stated penological goal of the Arizona adult criminal justice system. *See* A.R.S. §§ 13-101, -101.1.

¶45 In recent decisions, however, the United States Supreme Court has cautioned that "the case for retribution is not as strong with a minor as with an adult." *Graham*, 560 U.S. at 71 (quoting *Roper*, 543 U.S. at 571). "The case becomes even weaker with respect to a juvenile who did not commit homicide." *Id.* This is because the "heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender." *Id.* (quoting *Tison v. Arizona*, 481 U.S. 137, 149 (1987)). Similarly, the youthful "immaturity, recklessness, and impetuosity" that reduces the blameworthiness of juvenile offenders also

---

[11] Kassner was charged when he was 18 years old with a sex crime committed while he was 10 years old. *Kassner*, 427 P.3d at 660, ¶¶ 2–3. He pled guilty and received a "special sex offender sentencing alternative." *Id.* at 660, ¶ 4. We note the Supreme Court has held that an Eighth Amendment claim can be waived. *See Stewart v. LaGrand*, 526 U.S. 115, 119 (1999).

diminishes the likelihood that juveniles will be deterred by potential punishment. *Miller*, 567 U.S. at 472 (citing *Graham*, 560 U.S. at 72).

¶46 The Court's "decisions rested not only on common sense . . . but on science and social science as well." *Miller*, 567 U.S. at 471. Likewise, common sense and science both support the notion that the relevant psychological distinctions between adults and juveniles are amplified when the juveniles are preadolescents.

¶47 Psychologists have concluded that "the brain changes characteristic of adolescence"—those yet to be realized in preadolescents—"are among the most dramatic and important to occur during the human lifespan." Laurence Steinberg, *A Behavioral Scientist Looks at the Science of Adolescent Brain Development*, 72 Brain and Cognition 160, 160 (2009). One study, for example, showed that "[t]he brain in adolescence differs significantly from the brain in childhood." Petronella Grootens-Weigers, et al., *Medical Decision-Making in Children and Adolescents: Developmental and Neuroscientific Aspects*, 17 BMC Pediatrics 120, 125 (2017). And as noted in the study, the critical development period for certain cognitive abilities lasts through preadolescence and "into adolescence or even beyond." *Id.* at 125, Figure 1. These abilities include memory, reasoning, weighing risks and benefits, abstract thinking, and mentalizing. *Id.* at 125. The study also explained that although children may make mature decisions in "cold" situations, "risk-taking is increased" in a "hot situation," which affects decision-making "severely." *Id.* at 126; *see also* Sara B. Johnson, et al., *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, J. Adolescent Health, Sept. 2009, at 4 ("Hot cognition refers to conditions of high emotional arousal or conflict," which often fuels "the riskiest of adolescent behaviors."); Laurence Steinberg, et al., *Are Adolescents Less Mature than Adults? Minors' Access to Abortion, the Juvenile Death Penalty, and the Alleged APA "Flip-Flop,"* 64 Am. Psych. 583, 586 (2009) (Adolescents are less mature in capacities related to impulse control and resistance to peer pressure, which affects the decision to commit a crime, a decision that is "usually rash.").

¶48 A study by the American Psychological Association also concluded that individuals aged 10 and 11 had lower cognitive capacity than older juveniles and young adults. Steinberg, et al., *supra*, at 591. The study found that cognitive capacity increased with age until it plateaued around 16 or 17. *Id.* at 590–91. And other studies "on age differences in psychosocial characteristics such as impulsivity, sensation seeking, future orientation, and susceptibility to peer pressure show[] continued

development well beyond middle adolescence and even into young adulthood." *Id.* at 587. The Supreme Court has also concluded that "juveniles have less control, or less experience with control, over their own environment." *Roper*, 543 U.S. at 569 (citing Laurence Steinberg & Elizabeth Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 Am. Psych. 1009, 1014 (2003)).

¶49 Thus, the rationales supporting traditional penological theories are significantly diminished when applied to preadolescent juveniles. And "[a] sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." *Graham*, 560 U.S. at 71.

¶50 As part of any proportionality analysis, we must consider the nature of the offense committed. *Graham*, 560 U.S. at 69–70. We thus begin by noting that Agundez-Martinez was convicted and sentenced for nonhomicide crimes. The Supreme Court has repeatedly recognized "a line 'between homicide and other serious violent offenses against the individual.'" *Id.* at 69 (quoting *Kennedy*, 554 U.S. at 438). Although nonhomicide offenses may be "serious crime[s] deserving serious punishment," they differ from homicide. *Id.* (quoting *Enmund v. Florida*, 458 U.S. 782, 797 (1982)). The question before us is whether any of Arizona's penological goals are advanced by sentencing an individual as an adult for nonhomicidal conduct committed when he was a preadolescent only because the individual is now an adult. We conclude that they are not.

¶51 First, the goal of retribution is inadequate to support the sentencing practice at issue. As noted, the retribution rationale turns on "the personal culpability of the criminal offender." *Graham*, 560 U.S. at 71 (quoting *Tison*, 481 U.S. at 149). And as explained above, the culpability of an offender between the ages of 10 and 12 is significantly diminished.

¶52 Perhaps more importantly, however, is that the State subjected Agundez-Martinez to the adult sentencing scheme only because he was 23 when the charges were filed. For retribution to justify a sentence, however, the punishment must reflect the offender's culpability at the time of the offense. *See Graham*, 560 U.S. at 74 (Eighth Amendment prohibits life without parole for those under the age of 18 "when the offense was committed" to prevent the sentence from being imposed on "offenders who are not sufficiently culpable to merit that punishment."); *Roper*, 543 U.S. at 574 ("The qualities that distinguish juveniles from adults do not disappear when an individual turns 18."); *see also Thompson*, 487 U.S. at 838 (Eighth Amendment prohibits the death penalty for anyone "who was under 16

years of age at the time of his or her offense."). The State prosecuted Agundez-Martinez as an adult simply because of the passage of time. Under this scheme, the State does not, and could not, relate Agundez-Martinez's preadolescent culpability to his adult sentence. Retribution, therefore, does not justify imposing an adult sentence on such an offender.

¶53        Likewise, deterrence does not justify the adult sentence either. The psychology and neuroscience discussed above explain that younger juveniles weigh risks and benefits less maturely and are less likely to be future-oriented than their older counterparts. As a result, the same developmental and psychological reasons that make preadolescents less culpable for their crimes render them "less susceptible to deterrence." *Cf. Roper*, 543 U.S. at 571 (same conclusion when comparing juveniles to adults).

¶54        Preadolescents are also much less likely to consider possible punishment "when that punishment is rarely imposed." *See Graham*, 560 U.S. at 72. As discussed, this court is aware of only one case upholding a similar sentence. *See Martz*, 232 A.3d at 819. If any other such cases exist, it is clear they are extraordinarily rare. The lack of additional cases lessens the likelihood that these adult charges deter preadolescent juveniles from committing offenses. Put simply, it is unreasonable to expect that any child aged 12 or younger would be deterred from committing an offense because of fear the actions may surface nearly a decade later, leaving the individual vulnerable to adult charges. Deterrence does not justify the sentencing scheme.

¶55        Our legislature does not justify the sentence imposed on an offender such as Agundez-Martinez by claiming he requires incapacitation. *See* A.R.S. § 13-101.01 (invoking the incapacitation justification but limited to repeat offenders). Even if it did, the reasoning could not rationally apply. The incapacitation justification "assum[es] that the juvenile offender . . . will be a danger to society." *Graham*, 560 U.S. at 72. Such a danger to society would be expected to offend again, yet the practice at issue suggests that the years between the offense and prosecution are irrelevant, and the defendant should be sentenced as an adult even if he shows development and maturity.[12] It strains credulity to argue that, despite existing harmlessly

_____

[12]        There is no evidence Agundez-Martinez has a criminal history during the more-than-a-decade between his last offensive act as a 12-year-old and his convictions in this case.

ever since, someone must be removed from society now because a decade earlier he committed offensive conduct as a preadolescent. The incapacitation justification is thus insufficient to sustain the sentences.

**¶56**        The penological justifications are so severely diminished here that they cannot support the sentencing practice. "Even if the punishment has some connection to a valid penological goal, it must be shown that the punishment is not grossly disproportionate in light of the justification offered." *Graham*, 560 U.S. at 72. But because this scheme "lack[s] any legitimate penological justification," it "is by its nature disproportionate to the offense." *See id.* at 71. This determination, coupled with the limited culpability of preadolescent offenders and the exceptional rarity of this scheme's application, establishes that the sentencing practice applied to Agundez-Martinez was cruel and unusual. We, therefore, hold that, for a defendant who committed nonhomicidal acts when he was a preadolescent juvenile, the Eighth Amendment forbids the State from subjecting the defendant to the adult sentencing scheme only because he is an adult at the time of prosecution.

**¶57**        On this record, the only reason Agundez-Martinez received an adult sentence was because of his age when the State filed the charges. If the convictions are ultimately affirmed, we would vacate his sentences and remand to the superior court for a hearing to determine whether there is a legitimate reason to punish Agundez-Martinez as an adult. *Cf. Miller*, 567 U.S. at 489 (court "must have the opportunity to consider [the] circumstances" before determining punishment). The State concedes that it can no longer punish Agundez-Martinez as a juvenile. As a result, if the superior court were to find no constitutional reason to sentence Agundez-Martinez as an adult, it would have to order his release.

**C.        Sentencing Agundez-Martinez to 51 Years' Imprisonment Is Cruel and Unusual Punishment.**

**¶58**        Even if "a sentencing scheme . . . does not violate the Eighth Amendment in its general application[, it] may still, in its application to 'the specific facts and circumstances' of a defendant's offense, result in an unconstitutionally disproportionate sentence." *State v. Berger*, 212 Ariz. 473, 481, ¶ 39 (2006) (quoting *State v. Davis*, 206 Ariz. 377, 384, ¶ 31 (2003)).

**¶59**        Agundez-Martinez likens his case to *Kleinman* to argue that a 51-year sentence is cruel and unusual under the facts. In *Kleinman*, the defendant was 12 or 13 when he committed sex offenses like those committed by Agundez-Martinez. 250 Ariz. at 363, ¶ 2. The victim was his

5- or 6-year-old sister. *Id.* Kleinman was not prosecuted until he was 20 years old, so the State charged him as an adult, and he was sentenced to three consecutive 13-year terms without the possibility of early release. *Id.* at 363, 364, ¶¶ 3, 7. Kleinman appealed, arguing that his sentence violated the Eighth Amendment. *Id.* at 365, ¶ 14. This court vacated the 39-year sentence after considering Kleinman's age when he committed the offenses, the nature of the acts, Kleinman's exposure to sexual misconduct within his family, the victim's request that Kleinman receive the lowest sentence possible, the superior court's comments that the sentence was disproportionate, and the State's concession that the sentences were excessive and its request for a reduced sentence. *Id.* at 365–66, ¶ 16.

¶60        As in *Kleinman*, Agundez-Martinez seeks relief from consecutive sentences. Our supreme court has repeatedly stated the general rule that we "will not consider the imposition of consecutive sentences in a proportionality inquiry." *Soto-Fong*, 250 Ariz. at 8, ¶ 29; *Berger*, 212 Ariz. at 479, ¶ 27; *Davis*, 206 Ariz. at 387, ¶ 47. But the court has also refused to "uphold a sentence that becomes unconstitutionally disproportionate to the crimes committed because the sentences are mandatorily lengthy, flat, and *consecutive*." *Davis*, 206 Ariz. at 388, ¶ 47 (emphasis added).

¶61        This exception—born in *Davis* and relied on in *Kleinman*—requires courts to "carefully examine the facts of the case and the circumstances of the offender." *Davis*, 206 Ariz. at 384, ¶ 34; *Kleinman*, 250 Ariz. at 365, ¶ 14. And "the Supreme Court has construed the Eighth Amendment to impose on a reviewing court the duty to examine a sentence claimed to be cruel and unusual in light of the specific facts and circumstances under which it is imposed." *Davis*, 206 Ariz. at 388, ¶ 49; *see also Berger*, 212 Ariz. at 487–88, ¶ 70 (Berch, J., concurring in part and dissenting in part) ("Arizona's sentencing scheme is unique in coupling extraordinarily long terms with mandatory stacking requirements, and in requiring that each sentence be fully served, without possibility of early release. The compounding impact of this triple whammy should not escape scrutiny. While great deference is owed to the legislature's choice to impose stringent sentences, the constitution imposes on this court the obligation to determine whether the resulting sentence is cruel and unusual in light of the circumstances of an individual case.").

¶62        The sentences imposed on Agundez-Martinez totaling 51 years are cruel and unusual given the circumstances, which are strikingly like *Kleinman* in several ways. First, Agundez-Martinez was between 10 and 12 when he committed his offenses, making him at least as young as Kleinman, who was 12 or 13. *See Kleinman*, 250 Ariz. at 363, ¶ 2. Both were

charged with similar sexual offenses. *See id.* at ¶ 1. And both were charged as adults because their conduct was not discovered until after they reached 18. *See id.* at ¶ 3. Because of Arizona's adult sentencing scheme for such offenses, both received sentences that were "mandatorily lengthy, flat, and consecutive." *See id.* at 365, ¶ 14 (quoting *Davis*, 206 Ariz. at 388, ¶ 47). The superior court expressed concern in both cases that the sentences were disproportionate. *See id.* at 364, ¶ 9.

¶63 To be sure, the circumstances are not identical. *Kleinman* included record evidence that Kleinman may have been a victim of or witness to sexual misconduct within his family before he committed his offenses. *See Kleinman*, 250 Ariz. at 363, ¶ 4. And the victim and her mother—Kleinman's sister and mother—asked for leniency at his sentencing. *Id.* at 364, ¶ 8. But the most glaring distinction between the two cases is the State's concession in *Kleinman* that the 39-year cumulative sentence was "unconstitutionally excessive," *id.* at ¶ 8, while the State advocates here for 51 years' imprisonment. The prosecutor, however, cannot define the constitutional boundaries of criminal sentencing practices. *Cf. State v. Dykes*, 163 Ariz. 581, 584 (App. 1990) (Although the State may advocate for aggravated sentences, the prosecutor's role may not infringe on the judicial function, as it would violate the separation-of-powers doctrine.). A difference in the State's position or advocacy cannot be why one sentence is constitutional, but another is not.

¶64 The similarities far outweigh the remaining differences between these cases. The very young age of the offenders, the nature of the offenses, and the mandatorily long, flat, and consecutive sentences imposed only because of the prosecution's timing create a punishment that is "so severe as to shock the conscience of society." *See Berger*, 212 Ariz. at 480, ¶ 38 (quoting *Davis*, 206 Ariz. at 388, ¶ 49).

¶65 Of course, a sentence is not unconstitutional simply because it "seems too long" or "shock[s] the conscience." *See Davis*, 206 Ariz. at 388, ¶ 49; *Berger*, 212 Ariz. at 480, ¶ 38. But based on the "specific facts and circumstances" before us, Agundez-Martinez's 51-year adult sentence is grossly disproportionate to the offenses he committed when he was between 10 and 12 years old. Thus, like *Kleinman*, this is an "extremely rare case" in which the prison sentences violate the Eighth Amendment's prohibition of cruel and unusual punishment. 250 Ariz. at 365, ¶ 15; *see also Berger*, 212 Ariz. at 480, ¶ 38.

¶66 As in *Kleinman*, the disproportionality is rooted in the DCAC statute's sentencing requirements. *See* 250 Ariz. at 365, ¶¶ 15–16. If

Agundez-Martinez's convictions are affirmed, we would modify them to non-dangerous, non-DCAC offenses, vacate his sentences, and remand for resentencing.

## CONCLUSION

¶67　　　We vacate Agundez-Martinez's convictions and sentences and order his release.



AMY M. WOOD • Clerk of the Court
FILED:　AA